IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TYREE LAWSON** | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **DETECTIVE DENISE HOISINGTON,** | : | NO. 11-171 |
| **et al.** | : | |

## MEMORANDUM

**BARTLE, J.**                                                                                               **JULY 22, 2014**

Plaintiff Tyree Lawson, a prisoner at the State Correctional Institution at Forest, brings this civil rights action against Detective Denise Hoisington, Assistant District Attorney John N. Gradel, Darin Collins, and unknown officers working in the mailroom at the Montgomery County Correctional Facility. He seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant plaintiff leave to proceed *in forma pauperis* and dismiss his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) & (ii).

### I.     FACTS AND PROCEDURAL HISTORY[1]

Plaintiff's claims arise out of the seizure of his DNA, his prosecution in the Montgomery County Court of Common Pleas, and the conditions in which he was confined at the Montgomery County Correctional Facility (MCCF). Documents attached to the complaint reflect that a robbery occurred on June 12, 2006, and that DNA evidence and a cell phone belonging to plaintiff were recovered from the victims' residence. On March 26, 2008, Detective Hoisington obtained a search warrant for plaintiff's DNA, which was executed on April 17, 2008. The detective obtained a second warrant for plaintiff's DNA, which was

---

[1] The following facts are taken from the complaint, documents attached to the complaint, and publicly available dockets of plaintiff's criminal proceedings in state court.

1

executed on May 16, 2008.  An analysis revealed that the samples taken from plaintiff matched the DNA found at the crime scene.  As a result, Detective Hoisington charged plaintiff with several crimes in the Montgomery County Court of Common Pleas.  *See Commonwealth v. Lawson*, Criminal Docket No. CP-46-CR-0000542-2009 (Montgomery Cnty. Ct. of Common Pleas).  Plaintiff was arrested on January 13, 2009 in connection with the charges.

   In September of 2010, plaintiff filed a declaration in his criminal case, which he attached as an exhibit to his complaint in this action.  In the declaration, plaintiff alleged that several aspects of his criminal case violated his constitutional rights, including the denial of his *pro se* omnibus pretrial motion, filed July 15, 2010, which in part sought to suppress evidence based on alleged deficiencies in the search warrants for plaintiff's DNA.  (Compl. Ex. E.)  Plaintiff also indicated that he encountered difficulties with discovery, complained of his counsel's failure to seek an independent test of the Commonwealth's DNA evidence, and contended that Detective Hoisington falsely testified at his preliminary hearing by stating that his DNA matched the DNA found at the crime scene.  Plaintiff further alleged that several *pro se* motions he submitted to the state court were not filed.  He believed that the state court chose not file the motions, or the MCCF, where he was confined at the time, was refusing to send out his legal mail.

   Other exhibits attached to the complaint reiterate plaintiff's belief that officials at MCCF were interfering with his legal mail in late 2010.  At that time, plaintiff was proceeding *pro se* in his Montgomery County criminal case and with an appeal from a Philadelphia criminal conviction.  *See Commonwealth v. Lawson*, 3055 EDA 2009 (Pa. Super. Ct.).  Plaintiff filed a grievance concerning his attempt to send a package of legal materials to a family member by certified mail.  He alleged that Lieutenant Darin Collins responded to his grievance by informing him that delivery of the package had been attempted.  However, Collins allegedly refused to

provide plaintiff with prison records related to the grievance and told plaintiff to get a subpoena if he wanted to see the prison's records. (Compl. Ex. F.) Plaintiff also had an issue with a package he sent to the Pennsylvania Superior Court, apparently because it was not mailed immediately. However, it is apparent from plaintiff's exhibits that the package was received by the state court eight days after plaintiff sent it. (Compl. Ex. M.)

Based on the above facts, plaintiff initiated this lawsuit, pursuant to 42 U.S.C. § 1983, against: Detective Hoisington; Assistant District Attorney John Gradel, who was involved in prosecuting the Commonwealth's case against plaintiff; Darin Collins; and unidentified employees of the MCCF mailroom. Plaintiff asserted constitutional claims based on his allegations that: (1) the seizure of his DNA was illegal due to certain defects in the warrants; (2) Hoisington planted his DNA at the crime scene; (3) his criminal proceeding suffered from several constitutional deficiencies; and (4) prison officials at MCCF were "tampering [with] & delaying" his incoming and outgoing mail. Plaintiff sought the following relief: (1) an order transferring him from MCCF "to a facility that has [an] adequate law library . . . so [he] can properly litigate [his] Philadelphia criminal direct appeal"; (2) appointment of counsel; (3) discovery in his criminal case, including an independent DNA test on the Commonwealth's evidence; (4) dismissal of the charges against him; (5) damages; and (6) the imposition of federal criminal charges against defendants Hoisington and Gradel.

Plaintiff submitted his complaint to prison authorities for mailing to the Court on January 5, 2011. The complaint was received by the Court and docketed on January 11, 2011. As plaintiff failed to pay the applicable fees or file for leave to proceed *in forma pauperis*, the Court initially closed his case without prejudice to his curing the filing defect within thirty days. Plaintiff returned with an *in forma pauperis* application and a notice providing the Court with his new

address because he had been transferred to state prison.  On February 18, 2011, in response to plaintiff's *in forma pauperis* motion, the Court issued an order informing plaintiff that, in the event the Court granted his motion, he would be obligated to pay the $350 filing fee in installments pursuant to the Prison Litigation Reform Act, even if his case was dismissed.  As plaintiff might not have been aware of those consequences, the Court denied his *in forma pauperis* motion without prejudice to his reinstating it by notifying the Court, within twenty days, that he sought to proceed with the understanding that he would be obligated to pay the filing fee.  Plaintiff failed to respond in the time period provided by the order.

Plaintiff did not submit anything else to the Court until three years and five months later, when he filed a new *in forma pauperis* motion in June of 2014.  He also filed a "Motion to Amend and Request for Return of all Filed Documents," in which he acknowledged receiving the Court's February 18, 2011 order on about March 15, 2011, but indicated that he "[had] not pursued to re-open the instant matter." (Document No. 7.)  However, he now seeks to proceed with his claims.  During the time period between the submission of his complaint and the filing of his recent *in forma pauperis* motion, plaintiff was convicted in the Montgomery Court of Common Pleas and sentenced to a term of imprisonment. *See Commonwealth v. Lawson*, Criminal Docket No. CP-46-CR-0000542-2009 (Montgomery Cnty. Ct. of Common Pleas).  His sentence was affirmed on appeal, *see Commonwealth v. Lawson*, 1705 EDA 2011 (Pa. Super. Ct.), and his post-conviction proceedings were unsuccessful.  He currently has a habeas petition pending in this district.  *See Lawson v. Overmyer*, Civ. A. No. 14-135 (E.D. Pa.).

## II.     STANDARD OF REVIEW

The Court grants plaintiff leave to proceed *in forma pauperis*.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) apply, which require the Court to dismiss the complaint if it is frivolous

or fails to state a claim. A complaint is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995). Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). The Court may also consider exhibits attached to the complaint and matters of public record. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). Additionally, the Court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006); *cf. Ball v. Famiglio*, 726 F.3d 448, 459 (3d Cir. 2013). As plaintiff is proceeding *pro se*, the Court must construe his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III. DISCUSSION

#### A. Plaintiff Asserts Claims that are not Cognizable in a Civil Rights Action

The Court understands plaintiff to be claiming that he was maliciously prosecuted in the Montgomery County Court of Common Pleas and that those criminal proceedings failed to comport with the Constitution in several respects. The Court also understands plaintiff to be asserting claims based on his allegation that Detective Hoisington planted his DNA at the crime scene.

A prisoner who seeks relief in a civil rights action based on "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," may not recover damages or other relief unless he "prove[s] that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted). In other words, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)— if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis omitted).

Plaintiff was convicted of robbery, burglary and other offenses in Montgomery County based in part on the DNA evidence he claims to have been planted. *See Lawson v. Overmyer*, E.D. Pa. Civ. A. No. 14-135 (Document No. 1 at 19-20 & 39). His allegation that Detective Hoisington planted the DNA evidence used to prosecute and convict him necessarily undermines his convictions, which have not, at this point, been invalidated. Likewise, plaintiff's claims based on the alleged constitutional deficiencies in the Montgomery County criminal proceeding would necessarily imply the invalidity of his convictions. Accordingly, those claims are not cognizable in a civil rights action.[2] *See, e.g.*, *Spuck v. Clearfield Cnty.*, 540 F. App'x 73, 74 (3d Cir. 2013) (per curiam); *Flood v. Schaefer*, 367 F. App'x 315, 317-18 (3d Cir. 2010) (per curiam). In any

---

[2] Even if plaintiff had indicated his desire to proceed with this lawsuit in a more timely fashion, i.e., before he was convicted, his claims related to his prosecution would have been dismissed and/or stayed pending the outcome of his criminal proceeding. *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007); *Younger v. Harris*, 401 U.S. 37, 43-44 (1971).

event, plaintiff cannot prevail on a malicious prosecution claim because the criminal proceeding he challenges did not terminate in his favor. *See Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (en banc). If plaintiff seeks to challenge the constitutionality of his state proceeding and his related imprisonment, he must pursue his claims in his *habeas* proceeding.

### B. Plaintiff's Remaining Claims are Time-Barred

Success on plaintiff's Fourth Amendment claims challenging the seizure of his DNA based on defects in the search warrants or his claims based on how officials at MCCF handled his mail would not necessarily imply the invalidity of his convictions. *See Heck*, 512 U.S. at 487 n.7. Nonetheless, the Court must review those claims for timeliness.

In § 1983 actions, federal courts apply the statute of limitations governing personal injury claims in the state where the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Pennsylvania, where plaintiff's claims arose, the relevant statute of limitations is two years. *See* 42 Pa. Cons. Stat. § 5524. Plaintiff's claims accrued when he "ha[d] a complete and present cause of action, that is, when [he could] file suit and obtain relief." *See Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quotations omitted). However, Pennsylvania law, which applies unless inconsistent with federal law, *id.*, allows for tolling in the event of "fraud or its equivalent," 42 Pa. Cons. Stat. § 5504, and in accordance with the discovery rule, which "delays the running of the statute until the plaintiff knew, or through the exercise of reasonable diligence should have known, of the injury and its cause." *Beauty Time, Inc. v. VU Skin Sys., Inc.,* 118 F.3d 140, 144 (3d Cir. 1997) (quotations omitted). Pursuant to the prison mailbox rule, a prisoner's complaint is considered filed at the time he hands it over to prison authorities for forwarding to the Court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

The seizures of plaintiff's DNA that underlie his Fourth Amendment claims took place in 2008.  In general, a cause of action based on an illegal search or seizure accrues at the time of the search or seizure.  *See Jackson v. City of Erie Police Dep't*, --- F. App'x ---, 2014 WL 2783962, at *2 (3d Cir. June 20, 2014) (per curiam).  However, the complaint and attached exhibits reflect that plaintiff encountered difficulties with discovery in his criminal case, such that he may not have received copies of the search warrants (and thus, been aware of any defects) until sometime in 2010, before he filed his omnibus pretrial motion in July of 2010.  Assuming, without deciding, that the limitations period may be tolled on that basis, plaintiff's Fourth Amendment claims would have accrued at some point in the first half of 2010.  Plaintiff's claims based on the interference with his legal mail accrued in the latter half of 2010, when he experienced mail-related difficulties at MCCF.

Plaintiff submitted his complaint to prison authorities for mailing on January 5, 2011—well within the limitations period, assuming his claims all accrued in 2010.  Plaintiff did not pay the filing fee or submit a motion to proceed *in forma pauperis* at that time, but that does not necessarily deprive him of the January 5, 2011 filing date because "a complaint [is deemed] constructively filed as of the date that the clerk received the complaint—as long as the plaintiff ultimately pays the filing fee or the district court grants the plaintiff's request to proceed *in forma pauperis*."  *McDowell v. Del. State Police*, 88 F.3d 188, 191 (3d Cir. 1996); *see also Urrutia v. Harrisburg Cnty. Police Dep't*, 91 F.3d 451, 457 n.8 (3d Cir. 1996).  When plaintiff was notified of the defect in his filing, he promptly returned with an *in forma pauperis* motion.  The Court then issued a second order, dated February 18, 2011, denying the *in forma pauperis* motion without prejudice to plaintiff to reinstating it by informing the Court within twenty days that he

wanted to proceed with his claims *in forma pauperis* even though he would be obligated to pay the filing fee in accordance with the Prison Litigation Reform Act.

Had plaintiff timely responded to the Court's second order, his *in forma pauperis* motion would have been granted and the complaint would have been deemed filed as of January 5, 2011. Instead of doing so, however, plaintiff delayed three years and five months before making any effort to prosecute his claims. Accordingly, there is a question as to whether plaintiff can claim the benefit of the January 5, 2011 filing date despite his nearly three-and-a-half-year delay.

The Court of Appeals' opinion in *McDowell v. Delaware State Police*, 88 F.3d 188 (3d Cir. 1996), provides some guidance on this issue. In that case, Thomas McDowell, a *pro se* litigant, filed a paper entitled "Motion for Compensation" on October 25, 1993, without including the filing fee or a motion to proceed *in forma pauperis*. The clerk did not docket it or open a case file but, instead, sent McDowell a letter advising him that the "motion" could not be considered unless McDowell filed a complaint that comported with the Federal Rules of Civil Procedure, along with payment of the filing fee or a request to proceed *in forma pauperis*. The clerk's letter stated that a form request for proceeding *in forma pauperis* was enclosed. McDowell responded fourteen months later with a letter in which he noted that he intended the "Motion for Compensation" to be treated as a complaint and that the clerk's letter failed to include a form for proceeding *in forma pauperis*. McDowell's letter enclosed a properly drafted complaint and a completed *in forma pauperis* application.

The district court granted McDowell leave to proceed *in forma pauperis* and directed docketing and service of McDowell's complaint. However, the district court ultimately dismissed the complaint as untimely. The district court held that the clerk should have accepted McDowell's initial filing and, thus, deemed the complaint to have been filed as of the date

9

McDowell submitted his "Motion for Compensation," which was within the limitations period. McDowell's complaint was nevertheless untimely according to the district court because McDowell delayed fourteen months before returning with his *in forma pauperis* motion.

On appeal, the Court of Appeals agreed that the clerk should have accepted McDowell's initial filing despite the absence of a filing fee or *in forma pauperis* motion. Accordingly, when the district court granted McDowell leave to proceed *in forma pauperis*, his complaint was deemed constructively filed as of the date of his initial submission because, "once the filing fee requirement is satisfied (either through remittance of the filing fee or the district court's grant of the plaintiff's IFP application), the filing date will relate back to the date on which the clerk received plaintiff's papers." 88 F.3d at 191. McDowell's complaint was, therefore, constructively filed as of October 25, 1993—one day shy of the expiration of the limitations period.

With regard to the fourteen month delay between McDowell's filing of his initial pleading and the submission of his IFP motion, the Court of Appeals rejected the notion that "a plaintiff can delay prosecution of an action indefinitely by withholding the filing fee and refusing to submit a request to proceed *in forma pauperis*." *Id.* Nevertheless, the Court concluded that McDowell was entitled to the benefit of his initial filing date because there was no evidence that he "acted in bad faith or that the defendants [had] been prejudiced by the delay." *Id.* Furthermore, he offered plausible excuses for the delay because his incarceration at several facilities delayed his receipt of the clerk's letter, and by the time he received the letter, the statute of limitations had run. These circumstances caused him to believe that further efforts would be futile until he became aware of the clerk's error in rejecting his filing.

10

The instant case is distinguishable from *McDowell*. Here, unlike in *McDowell*, the clerk filed plaintiff's complaint even though it was unaccompanied by the filing fee or a motion to proceed *in forma pauperis*. Once plaintiff cured the filing defect by promptly submitting an *in forma pauperis* motion, the Court issued its February 18, 2011 order to give plaintiff an opportunity to decide whether to go ahead with his claims in light of the fact that he would have to pay the filing fee. That order clearly instructed him that, if he sought to proceed, he was required to notify the Court within twenty days of the date of the order.

Plaintiff acknowledges in his "Motion to Amend and Request for Return of All Filed Documents" that he received the Court's order on March 15, 2011, but "due to the oppression suffered there-after [he] has not pursued to re-open the instant matter." (Document No. 7, at 2.) The motion does not further describe the "oppression." To the extent plaintiff was experiencing delays with his mail at MCCF, the docket reflects that he was transferred to a different facility within two weeks of the docketing of his complaint. In any event, the dockets from plaintiff's criminal proceeding in Montgomery county, *Commonwealth v. Lawson*, Criminal Docket No. CP-46-CR-0000542-2009 (Montgomery Cnty. Ct. of Common Pleas), his appeal related to his conviction in Philadelphia county, *Commonwealth v. Lawson*, 3055 EDA 2009 (Pa. Super. Ct.), and a case he initiated in federal court in July of 2011, *Lawson v. Carpenter*, E.D. Pa. Civ. A. No. 11-3123, reflect that plaintiff was capable of litigating his claims if he chose to do so. Unlike McDowell, who was the victim of a clerical error exacerbated by a change in circumstances that delayed his receipt of the clerk's letter, plaintiff in this case made a calculated choice to abandon his claims.[3] Plaintiff's change of heart approximately three-and-a-half years

---

[3] Although plaintiff received the Court's February 18, 2011 order after the time period for responding expired, he never filed a motion for extension of time or otherwise communicated with the Court until he filed his second *in forma pauperis* application nearly three-and-a-half

11

later should not allow him to gain the benefit of the earlier filing date. In other words, he does not fall under *McDowell* because the "Court ruled on plaintiff's application at the outset of the suit . . . and accorded plaintiff the opportunity to reopen his case . . . —an invitation that plaintiff did not accept." *Cortina v. Bader*, 09-1988, 2010 WL 1253907 at *3 n.6 (D.N.J. Mar. 24, 2010). Thus, plaintiff's remaining claims are time-barred.[4]

## IV.  CONCLUSION

For the foregoing reasons, plaintiff's complaint will be dismissed with prejudice as legally frivolous and for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) & (ii). Plaintiff will not be given leave to file an amended complaint because amendment would be futile, as he cannot cure the defects in his claims. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). An appropriate order follows.

---

years later. Plaintiff's choice to abandon his claims renders any delay in receiving the order irrelevant.

[4] Some courts faced with the problem of determining the timeliness of an action in which a plaintiff has initially been denied *in forma pauperis* status and has thereafter delayed paying the filing fee have adopted the following rule: the limitations period is tolled while the court considers an IFP motion but, once the court denies the motion, the burden is shifted back to the plaintiff to cure the filing deficiencies within a time-period set by the Court or within a reasonable time. *See Williams-Guice v. Bd. of Educ. of City of Chicago*, 45 F.3d 161, 164-65 (7th Cir. 1995); *Jarrett v. US Sprint Commc'ns Co.*, 22 F.3d 256, 259-60 (10th Cir. 1994); *Scary v. Phila. Gas Works*, 202 F.R.D. 148, 151-52 (E.D. Pa. 2001); *Breckin v. MBNA Am.*, 28 F. Supp. 2d 209, 211 (D. Del. 1998), *aff'd* 205 F.3d 1328 (3d Cir. 1999) (unpublished table disposition). The same rule could arguably be applied to cases in which a plaintiff unreasonably delays curing a defect in his *in forma pauperis* motion to preclude tolling in the event of inordinate delay.